May it please the Court, Your Honors, Jonathan Cole and Emma Second Cole for appellants M-MLS.com and Peter Sommer. Your Honors, there are at least five separate reasons why relief should be granted with respect to the default judgment entered below or alternatively the motion to add .com and Sommer as defendants pursuant to a post-judgment proceeding. Counsel, can you challenge the default judgment at this point, the underlying default judgment, can you challenge that at this point? Yes, I believe that I properly can challenge that at a point in time when .com and Sommer become joined to that judgment. I certainly believe they have a due process right to challenge the validity of that judgment having never had that right before. What case authority are you relying upon to support your position that a default judgment that has become final is now subject to challenge? Your Honor, I think that what I am relying on is the general precepts in the Code and the Federal Rules under 60B for relief. 60D? B. B. Because what I'm saying, Your Honor, is that when the judgment was entered against Inc., M-MLS, Inc., it doesn't have standing. Before you go there. Okay. Rule 60B contains some timelines, doesn't it? Well, of course, Your Honor, it does contain timelines. And how could .com or Peter Sommer have set aside a default judgment before they were joined as judgment debtors? It's a physical impossibility. It depends on the success of a argument you are making today. Because the theory of adding you to the judgment, your clients to the judgment, was that they were really there all along and in control. And they were there for appeal and time and everything else. So the success of your answer to this question really depends on your establishing that, no, we weren't there all along.  First of all, you have to realize you were there all along. You're not parties to this proceeding. You're supposed to assume you're there all along. The way I think of putting your name on it is that you really were. I mean, I think that's the way the state law looks at it. But think about it. As you do, that that's wrong. You weren't there. But think about it this way. If you're suggesting you were there all along, here's two players that were never parties to the action, never parties. You're going to say they were there all along. And suddenly they were supposed to figure out that they should have filed a notice of appeal to a judgment that they weren't even parties to, that they weren't even bound by. I don't even think they would have had standing to make that notice or intervene in such proceedings until they became a party. Once they become a party. In the theory, if you're really in control of the proceedings, you can see that somebody appeals it. Okay. So then you've got to – well, then think about that, Your Honor. Now you go and say, you know something, court, I was really the alter – I'm really the alter ego of this corporation. It's really mine. I've violated general corporate principles, unity of ownership. I've co-bingled assets. So it's really my corporation. So now here I am going to admit liability, step in, and now make a motion to set aside a default to which I'm not a party. I don't think that's what the law requires. And I don't think that's appropriate. And let's think about this. I don't think if a person really is the culpable party, the law does not require an acceptance of responsibility for any culpability. Is that your argument? No, Your Honor. This is a contested proceeding. We contested that. Of course not. And I don't believe those are the facts. I was creating an analogy that someone would have – That's your analogy. I understand. But someone would have to make that admission. We don't make that admission here. But that would be technically what you'd be required to do. I view this theme of kind of gotcha, too late. You got joined after the one year. Therefore, you should have had a crystal ball to figure out you would have been joined earlier, and therefore everything is untimely. But that only goes to the issue of the validity of this default judgment. And I believe, notwithstanding we have the right to attack the validity of this default judgment, that we weren't required to adopt the crystal ball approach to this case, which was to foresee we would have been joined and make a motion within one year. We timely made a motion to set aside this default judgment within 15 days or so of being joined in the default judgment. And we attacked it on Fifth and Fourteenth Amendment grounds of due process, amongst other grounds. And if you are going to construe our position as untimely as to setting aside the default, we still have two very viable and valid arguments about why we should have never been joined in the first place, that that in itself was a violation of due process. And that in itself did not meet the requisites of alter ego, successor corporation under applicable case law. So you still don't get there. Now, having said that, I want to... Angry, counsel? Angry?  I think this was absolutely a travesty of justice. When two people, when an entity and an individual who becomes ill, his corporation is not doing well, he's got an $87,000 case. Why does he believe it's an $87,000 case? Because that's what the complaint says. But more importantly... How about discovery? Wasn't there a mention of additional damages in discovery? Yeah. Vague reference to additional claims. But interestingly, Your Honor... Amounts. No. There were no amounts? No amounts. And interestingly, Your Honor, what's important there is I believe it was incumbent upon the trial judge to look at the contract. The contract precluded any award of consequential damages. There were no warranties of merchantability, warranties for the product. So I believe, on its face, the court just ignored the contract which precluded any award of consequential damages above the $87,000. So here you have Mr. Sommer. He becomes ill. He can't... The corporation can't afford to defend. The face of the complaint says $87,000. He borrows money from Framstein to continue to fund the corporation. He can't handle it any longer. And he makes a decision, I cannot defend this. I'm going to let it go. And he lets it go. And because he doesn't have counsel, his answer is stricken. And Mr. Framstein initiates proceedings in Canada. Liquidation and dissolution proceedings occur in accordance with Canadian laws of Canada. There's an appointment of Mr. Sklar as a receiver to sell the assets, to get appraisals. Mr. Ketzer has given notice of those proceedings. He hires counsel. He goes to participate in those proceedings and just lets them go, and the assets are sold in accordance with Canadian law. Now, to suggest that Mr. Sommer is properly joined under an alter ego theory when there's not one shred, not one iota of evidence to prove alter ego under the Associated Vendors Oakland Meat case, any other authority. So counsel, you're saying the judge found alter ego without any evidence in the record to support the finding? The only evidence in the record that I could discern, first of all, was based on incompetent evidence to which we objected, which was Mr. Horowitz's declaration, which had no foundation, and there was objections were lodged. But the only evidence, even if you assume the validity of the Horowitz declaration, was that Mr. Sommer was the president, treasurer, and operating officer of Inc., and he was similarly the president, treasurer, and operating officer of .com. Notwithstanding, they were separately formed, separate stock issued, there was no evidence of commingling of any of the assets of any of the companies. And what's more important, .com was not even the purchaser of the assets of Inc. at the sale in Canada. Who was the purchaser? A separate entity named Scamper, who's completely ignored, whose stock was owned by another person, who is Sommer's wife, yes. And an adequate explanation is given for why an insider or someone who knows the business would buy the assets in a court-administered Canadian proceeding. And let's not forget. Let's just go with that for a minute. The court-administered. There are two types of proceedings in Canada, right? One is court-supervised and one is not. It's private. True. Which of the two was used in this case? So we can't really say it was court-supervised. But it was conducted clearly in accordance with Canadian law properly, as the court found below. Absolutely. But it was not court-supervised. No. It was not because they went the private route, which was completely legal and completely appropriate. Okay? The bottom line here is that having done all of that, having Mr. Katsir had noticed of that, he didn't go up and contest it. And let's not forget Mr. Katsir. Did he take advantage of Canadian law? You bet he did. Why did he buy a machine in Canada? Good exchange rates, going to save money, and he saved taxes. So here he takes advantage of the benefits of Canadian law. And now when Canadian law is utilized properly, which the court found below to liquidate a corporation, he says, no, that's not binding on us. So just to back up. Well, it either is or isn't. I don't know how much difference it makes that he bought the thing in Canada. Well, if one takes advantage of Canadian law, Your Honor, and uses the benefits of that law, I would think that the detriments of that law would similarly apply. You don't get the benefits without the burdens. Okay? That's all I'm suggesting by that. He did get a benefit by doing business there. Well, it's an argument. Okay. We don't need to relabor. I understand. Your Honor, I believe we have standing to set aside the default judgment. I believe that the complaint under 54C pled damages of $87,000. There is no way you get from $87,000 to $1.6 million under the terms of this contract unless you ignore the terms of the contract. And the cases which guide us on this issue, and I believe the Felhaber case and the Fong case and the California State Becker v. SBC construction case all support the fact that this default judgment violates due process. I also believe that the retroactive amendment violated due process. And I believe that the only case relied on is this McClellan case, which is a successor liability case. It doesn't even go to the issue of the alter ego themes, and the NEC Electronics case is so on point. And what did it say? The individual had no incentive to defend the NEC lawsuit because the corporation was on the verge of bankruptcy. NEC's argument that the individual had an opportunity to present a defense in original action ignores these realities. The individual was not named as a party, had no risk of personal liability, and therefore was not required to intervene. Because the interests of the corporation and the individual were different, we cannot say that the individual had occasion to conduct the litigation with the diligence corresponding to the risk of personal liability that was involved. Your Honors, if Mr. Summers looking at a case worth $87,000 and makes a decision to walk away, it's one thing to have entered a judgment for $87,000 on the face of it. But to then ignore the terms of the contract about consequential damages, ignore that the face of the complaint only pleads $87,000, enter a $1.6 million default, then say a man to which you have no facts, to which you have no evidence, who doesn't even buy the assets, who submits an uncontradicted declaration contesting all of the issues of alter ego. He adhered to corporate formalities. No commingling. Separate stock. Maintenance of corporate records. Adequate capitalization. .8 was formed in 1993. He does all the right things and without any finding by the trial court of any of the prerequisites to support personal liability on Mr. Summers, Mr. Summers is out. It's a violation of the 14th Amendment, the 5th Amendment. And on top of that, no different argument really exists as to .com. It's simply added because the court, it was like, oh, it looked like it violated the smell test or something. The court has no facts, and Scamper, the entity who bought the assets, is completely ignored. And there's this simple issue about, oh, the same web domain. The domain was maintained without regard to the fact that they were completely separate businesses. .com was... What were the different businesses? What businesses did .com engage in that was different than the predecessor corporation? Were the businesses actually different? Yes. Business engaged in? Well, that's hard to specifically say. I want to answer it very directly. They both involved woodworking machinery and machinery and equipment sales. One was designed to handle liquidations and sales through the Internet and auctions on the Internet, i.e., a .com in the .com era. That's what this was. And the other business was completely devoid of use of necessarily the Internet. It did trade shows and... But sales of the wood products. Sales of business of both companies. Business of both companies. But again, that's, by its terms, is not improper. So... But that's evidence that the court could look at, isn't it, to determine whether or not the companies were one and the same? The court certainly could look at that evidence. I don't dispute that. But I just don't believe if you look at the admissible evidence... Keep in mind, and the only case relied on, the key case they have is this McClellan case. That case was fully tried on the merits. And the entity was a homeowners association which completely just spun all of its assets off to the new association, which just took the place of the old. I mean, the facts are so dissimilar, and they're just not applicable. And... What's our standard of review? It's a multiple standards of review, Your Honors. And I'd have to, because I have different standards of review for the different levels, for the different types of reviews. And I don't have... On alter ego, I believe it's an abuse of discretion, I think. I don't want to look at my brief, because I believe there were varying standards of review on the various different issues I asked. And I cited that in my opening brief, what those standards were. And I'm sorry, I don't... Which would be subject to clearly erroneous... Okay, I don't want to make a position that is in my brief, Your Honor. I'd like to go to one other point. I touched on the issue of comedy, which the Court should have abstained from exercising jurisdiction and giving comedy to the proceedings. Yes, they were private proceedings, but they were conducted in accordance with the Office of the Superintendent of Bankruptcy of Canada, administered and monitored by the Liquidation and Dissolution Division. The proper papers were filed. The Court acknowledged it was done correctly. Katzer got notice. He didn't contest it. He did nothing. Counsel, what's your best case authority for the proposition that we should give comedy to private proceedings? Canadian Southern Railway v. Gebhardt. Did you cite that in your brief? Yes, these are all cited in my brief. I don't know that I... I don't know that... I don't have a case that I can cite off the top of my head that said this is private v. Court-supervised, so I don't want to again mislead the Court. I believe some of the cases just deal with foreign bankruptcy proceedings. They don't necessarily distinguish sometimes. And in other cases, they're only referring to bankruptcy, so it's clearly they're Court-supervised. Right. Did you want to save some time for rebuttal? Yeah, just to... We're down to 1 minute and 50 seconds. Okay. Well, then I would like to save that 1 minute and 50 seconds to rebut. May it please the Court. My name is Martin Horowitz. I'm appearing on behalf of Appellee's Cases from Home Design. I'd like to correct a couple of statements. Mr. Cole indicated that the answer was stricken. The record doesn't reflect that the answer was stricken. The record reflects that a default was entered for failure to obtain new counsel. There's nothing in the court order striking the answer. So I believe that all of the cases that counsel relies upon are distinguishable in that the answers were stricken either as a result of a discovery violation or there was a failure to answer. In this case, I believe the answer stands through the entry of judgment. The court asked a question about whether there was an amount provided in response to the discovery request. In the record at page 1186, there's a letter from Mr. Summer to Mr. Katsuya where Mr. Summer states, I can't believe you're asking for $2 million and where did this fraud come from? So I believe that Mr. Summer had personal knowledge of the amount that Katsuya was claiming. I would agree with the court that entry of default judgment cannot be challenged 630 days after the entry of judgment. And that I also would look to find any cases that stood for that proposition or the proposition that Rule 60B relief could be had over one year. With regard to the motion to challenge or the challenge, the motion to amend the judgment. You counsel for Mr. Summer said that it's a real catch 22. If you're if you're saying that the default can't be appealed after time runs, but you don't have them until after time runs to the judgment. They're putting an impossible position, I think. I have two comments to make in that regard. First comment is that there was a motion to amend that was filed and heard within one year. That motion was challenged or the order amending the judgment was challenged based on the fact that service was not personal. It was by mail. So had they appeared at the hearing that was held within the one year, they could have brought the argument been within the one year time frame. However, the court, they decided not to challenge on that basis. They decided to challenge on a lack of personal service. Once personal service was effectuated, the time had run. So they were given an opportunity to appear before the court and make that argument to challenge the entry of the default judgment. The second argument that I have is. If an entity is doing something that a court can find is an act to defraud a creditor, then that entity must expect the fraud be uncovered and the subsequent entity be held liable for the acts of the predecessor corporation. It would be so easy for judgments to be avoided if once they were entered, the company says, oh, well, I'm just going to change business. It's easy for me to do that. I've got my CPA in my pocket. I've got my lawyer in my pocket. I'm going to just switch horses in midstream and now make the argument. Well, I left that one by the wayside and I'm not I can't be responsible for its obligations because this new company wasn't around. The opposing counsel takes the view that there was no evidence before the court that would support a finding of alter ego. Your Honor, thank you for bringing that up. I believe that there's three different tests that can be used for the imposition of alter ego. There's the associated vendor case, which lists the minutes, bylaws, meetings, commingling. And that is the test that appellants would like the court to use. There are two other tests. One test where I believe it was stated in AT&T versus a company of Bruxelles Lambert where the unity there is such a unity of interest and ownership between the corporations and that to disregard the entity, the new entity would result in fraud or injustice. That is a second test. And a third test, which is what case you rely upon for that test that you're espousing. It's ninety four. If the five, eight, six. AT&T versus a company of Bruxelles Lambert. And I believe that that test is also in other cases cited in my paperwork. Although I don't have those citations. So you have your view is that these are discrete tests that you don't have to include all of the factors, including the separate minutes, the separate bank accounts. That's a separate. You're saying that that's a totally different test that you're not espousing to us to consider. You want us to consider just the unity of interest test. Your Honor, I would like you to consider both unity of interest test and the third test, which is where the corporation where the company has perpetrated a fraud or accomplished some other wrongful or inequitable purpose. The court may disregard the corporate entity and treat the acts as if they were done by the individuals themselves or by the controlling disregard the fiction of the corporate entity based on the policies of alter ego, where it's the court is inclined to have justice be done. I believe the third test that I cited to you was in Carnaby. I'm sorry, in car versus Barnaby Hotel Corporation. If you'd like the citation on that, I can give it to you. Do you have it right there? Yes, Your Honor, I do. Twenty three. Cal app for 14. That case was cited in really leave under which is one eighty third one one one four. And that that case held that you did not require a finding of alter ego to impose liability. What is the fraud that you are representing triggers this third test? Your Honor, the history of this case. The from the from the fifty thousand dollar loan from the accountant all the way through to the final liquidation, the starting up of a new corporation of the dotcom corporation months before the judgment would be entered, never paying the CPA on the promissory note, although it was called for payments every month. Not one payment was made until it went into foreclosure. The decision to terminate the attorneys and allow the default to be entered. The fact that all of the assets of the corporation were sold at a private sale to basically another company inside of the spouse of Mr. Summers and then immediately transferred to the spouse. They were sold to Scamper Inc. Scamper Inc. was considered to be a personal holding company of Peter Summer by his own expert, Stephen Kurtz. But it is a separate corporation. That is correct, Your Honor. Is there any indication in this record that Scamper Inc. was improperly or illegally formed? It's not that it was improperly or illegally formed, Your Honor. I don't have any information as to that. All I know is that it's basically a holding company for Peter Summer and the president is his wife. And they paid inadequate consideration for the assets of MMLS, which they then transferred. They paid appraised value, didn't they? Your Honor, the appraisal didn't include the intellectual property. The appraisal didn't include the website or the web address, which the district court found was key to the business and the business operations. And the adverts run in all of the periodicals and trade magazines indicated the website to win and used MMLS.com constantly from the Well, that's not in the record. There was no evidence that the $50,000 was not actually paid. Lent was there. I am not sure that there isn't some bank record showing that the $50,000 was loaned. I don't know what MMLS and Peter Summer's accountant did with them to document the transaction. I do believe they filed the equivalent of a UCC one. The question that is raised is why would the company accountant, knowing that this company was in alleged difficulty, loan $50,000 on assets that we couldn't get 50% for six months later? So I think that part of the fraud was setting up the transaction to wash it through the liquidation so that the new company could continue selling wood on the Internet, or not wood, but woodworking machinery on the Internet without the weight of the judgment, owned by the same people, controlled by the same people, using the same staff. If the liquidation was legitimate and if Peter Summer's business was in real trouble, wouldn't there be more than three people notified of the liquidation? The only three people notified of the liquidation were the accountant, the attorney, and my client. But there are other creditors. I don't know who needs to be notified. Well, you would think there would be a landlord. There might be some taxing authorities, suppliers, vendors. If the business is in such trouble that it has to go through the process of reorganization or liquidation so it could move over into a new company, surely it would tell its other business contacts that it was liquidating? Isn't that argument pretty speculative? Absolutely. It is speculative. But it's one of the factors that lead me and the district court to believe that there was fraud committed based on a totality of the circumstances. We're basically finding a fraud on speculation. Is that what you're telling me? Your Honor, the facts relied on by the district court are all presented in the paperwork. There are a litany of factors. Each one by themself may be speculative and might not be an indication of fraud, but I think the totality of the circumstances, given — Speculation, pile on speculation, pile on speculation, pile on speculation equals fraud. Your Honor, I'm only agreeing, or not disagreeing, that the fact that all creditors were not listed in the liquidation proceeding was speculation on my part. I don't believe that any of the other facts relied on by the court was speculation. The ads said what they said. They were paid for by MMLS. They advertised MMLS.com. MMLS.com was using them. Peter Sommer was the president, secretary, chief financial officer, and sole shareholder of both companies. He was in total control of both companies. He can't even get the reason straight why he decided to stop defending. It was either because he was ill or because he had a downturn in business and couldn't afford to defend the case, or there was a receiver appointed. And I think that when the dates are hooked up to all of those facts, you can see that Peter Sommer was orchestrating a fraud that we have been fortunate enough to uncover, and he should be held responsible for his actions because he can't leave a lame horse to hop on a new horse and continue on with his business. On a totally different subject, how did the district court get to a 1.6 million default when the contract provided no responsibility for consequential damages? Your Honor, the paperwork provided to the district court, the declarations of Mr. Katzia, provided support for the request of the $1.6 million which the court entered. I don't know what the court did with the contract. And the $1.6 million request for entry of judgment was served on Mr. Sommer before the judgment was entered. So he knew going in that this was the amount that was likely to be entered against him, and he chose to do nothing about it. All he had to do was hire an attorney to go to the damages hearing. He didn't have to argue liability. He could go to the damages hearing and say no. Counsel, in your view, what is our standard of review on the court's determination of alter ego and or the finding of fraud? Well, on findings of fact, Your Honor, I believe it's a clearly erroneous standard. I would agree that the abuse of discretion applies to the request for relief from entry of default judgment. What about the finding of fraud? Is that a legal determination or a finding of fact? I believe the facts would need to be present to support the finding of fraud, although I'd prefer to have an abuse of discretion standard. So on the finding of fraud, what is the standard of review from your perspective? Your Honor, I would agree that it was correctly stated in Mr. Cole's brief. I did not challenge it. Would the court like to hear any argument on the amount of damages in the case of Henry v. Snyder or Fong? We'd like to hear argument on the points you think are important for us to consider in deciding this case. Thank you, Your Honor. On the unity of interest test, I believe that was set forth in the case of NEC v. Fong. And that unity of interest was described in NEC as being the interests of the corporation being unified with the interests of the alter ego. And in NEC, PH Corporation was the underlying judgment data. And it was the NEC who wanted to work out its problems and wanted to try and pay off its creditors. When it could not pay off its creditors, and when it believed it had a valid defense or should I back up and say it believed it had a valid defense for the NEC case, but it decided that it would rather try and work out with the creditors. NEC wouldn't buy off on the plan, so judgment was entered without contest by NEC. In NEC, the court found that the interests were different from Hurt, the subsequent alter ego, to PH Corporation, the original, because the subsequent alter ego would have preferred to have fought the case on the merits versus PH Corporation, which wanted to work it out. And if it couldn't, it could go into bankruptcy. I don't believe that there's any question that MMLS and MMLS.com have the same ownership, and then the failure to disregard would result in fraud or injustice. There has been the finding of fraud by the lower court. If this court were to remand it back to trial on the issue, we would face a situation where the underlying machine is four-plus years old. It's been sitting outside in a junkyard for most of that time, and CATSIL would not have the ability to provide an expert to show that the machine didn't work because the machine is in a substantially different condition today or in a year from today than it was when it was originally purchased. So we would have a total lack of ability to put on our proof that the machine was deficient. Did he sell it for scrap? Is that what you're telling me? I'm not sure if it's been sold for scrap or if it's just sitting outside in a couple of spaces in the parking lot, Your Honor. I thought you said it was in a junkyard. A junkyard is a parking lot, sitting in a parking lot in the sun, and the weather is as good as a junkyard, Your Honor. Counsel, that inspection would not have been done as related to the suit that was pending previously? Yes, Your Honor. It has been done. We have an expert, Robert Bromps. He has submitted a declaration subsequent indicating that he is in ill health. He lives in Oregon, and he's no longer available to testify on behalf of CATSIL. So our expert is now gone. He's not willing to testify. We have nothing. With regard to Mr. Summers' opportunity to litigate the underlying case, all of the evidence shows that he controlled the underlying litigation. He, in fact, provided a declaration which said that he believed he had aggressive defenses, which he was mounting. He had hired an expert, and he was working towards a summary judgment motion to defeat the claims entirely, and then he decided not to defend anymore. So I believe that he was in control of the litigation and had an opportunity to defend himself had he chosen to do so. I do not believe that his defenses as an individual are any different than the defenses that were asserted by the initial corporation, and that's in the record because the original answer has been provided and the proposed answer of Peter Summers and MMLS has been provided. They're at pages 41 through 52. It's the original answer, and then pages 1433 to 1444, and those answers are identical except for being in the plural for Summers and MMLS.com. They contain the same denials and the same affirmative defenses. What amount, if any, of the $1.6 million can be deemed consequential damages? I didn't break it down for today's hearing, Your Honor. I don't know. Did your client agree that he was not entitled to consequential damages under the contract? Not at all, Your Honor. If the consequential damages were to stand and something that would have slam-dunked the case, put that on in the summary judgment. I don't know whether it was valid or it was not valid. It was not available. It was not presented. We don't believe we believe that the $1.6 million was properly entered because that was the amount of damages suffered. Can you tell me from your knowledge of the contract what the contract language was about consequential damages? Your Honor, I don't recall the language of the contract. I don't know whether it does or it doesn't. Thank you. Counsel, your time has expired. Thank you very much. Thank you very much for your argument. Thank you. Refato? Thank you, Your Honor. Quickly, first, to clarify the standards for review, on the constitutional issues, it's a de novo review. That would be on the setting aside of the default issues. I agree with Your Honor on alter ego issues, including the fraud finding, would be clearly erroneous. And I believe it was clearly erroneous, as I will point out quickly. The comedy issues are abuse of discretion. And the Rule 60B issues are abuse of discretion. So that's how I laid it out. And I'm sorry I didn't have it to memory, but you were correct, Your Honor, on the issue of alter ego, as you aptly pointed out to me. I want to make some points here. This case is just devoid of evidence below. The unity of ownership on the alter ego is a prong. You've got to meet the prong before you go to the next prong. So you've got to have unity of ownership and interest so that the separate personalities exist, and then an inequitable result. They leapfrogged it. They forgot about the unity of interest issue. There is no unity of interest. There was no evidence. This is a clearly erroneous finding. And the fact is, the $50,000 was lent. And what's interesting is, if you look at the timeline, it was lent months, six months, eight months before the inability to afford counsel. Then counsel was discharged, and then the default came thereafter, nine months, almost a year later. So these proceedings don't happen quickly. And I want to just remember that the court said, in looking at what occurred in Canada, everything was done correctly. All of the proper filings were made. It was done by the book. And this issue that we, because they made a motion to join the two defendants, the two new defendants, within a year, that that suddenly triggered them to rush in to set aside the default, well, they specially appeared to attack jurisdiction. Had they done that, they would have waived their jurisdictional attack. Again, a catch-22. And they came in, and they specially appeared in contested jurisdiction, which they lost. Counsel, your time has expired, but let me ask you this question. I take it that you do not agree with opposing counsel that there are different tests to determine alter ego. I believe you have to meet as a threshold the unity of ownership of interest test with adequate evidence before you can go to the tests which follow, which result to the inequities or prejudice. And as part of your argument, are you saying then you look at whether or not there are separate minutes and separate? Absolutely. All right. I just want to make sure I understood your position. Thank you very much. Thank you to both counsel for your arguments on that case. Very well argued and brief. Thank you. The case just argued and submitted to the court for decision. The next case on calendar for argument is Ford v. ITT Hartford Insurance Group.
judges: Canby, Hansen, Rawlinson